Chapman v. Sikorsky Aircraft. Good morning, Judge Radji, and may it please the Court. My name is Josh Goodbaum. I represent the plaintiff, Appellant Mark Chapman. The following evidence requires that this age discrimination case be decided by a jury. First, in the months preceding the termination of Mark Chapman, his supervisor, Terry Eichmann, who was the person who made the decision to terminate Mark Chapman, made a number of comments at events age bias. He said, I'm quoting from the record, you're getting too old. You're an old bag of bones. That's just a selection. And two days before the termination, in connection with the event that supposedly is the reason that Mr. Chapman was terminated, Mr. Eichmann said to him, you're getting too old to continue to do this job, and you're an old man. Go home. Mr. Eichmann did not just focus his discriminatory statements on Mr. Chapman. He also made similar statements about a number of other older employees under his supervision, including about one, that man is not eligible for a promotion, quote, because of his age. Now, these are not oblique, at least a jury could find, these are not the sort of oblique references to succession planning that one might easily write off. These are not jokes. Rather, these are statements that evince the sort of age bias that this Court has said time and again is rare to be found in a discrimination case. Just look, though, at what got your client fired. Because we have e-mails in this case, so it's not a matter of conflicting versions of what was said. He basically refused to carry out a work assignment. And my question to you is whether any employer has to tolerate that. Your Honor, the employer has to tolerate it in a couple of different circumstances. One, it's important to look here at Sikorsky's policy. That's contained in the unsealed appendix at page A-144. And the policy says that the order given must be reasonable. Here, a jury could find this order was not reasonable. In fact, Where is there evidence of that in the record? I mean, it wasn't clear to me what was offered that on summary judgment we could say, okay, this is going to be a dispute of fact. Yes, Your Honor. There is substantial evidence from which a jury could conclude that Mr. Chapman was set up for failure by being given an impossible assignment. What is the evidence of that? First, he was given an assignment despite having been out five days on medical leave and sick leave. Second, he was given 12 hours to complete this assignment, even though his supervisor knew he had to leave at 1 p.m. for a doctor's appointment. It was due at 8 p.m. It then took the replacements to do that assignment, dozens of hours to complete. A third party, not Mr. Chapman, confirmed, I would not have been able to do that assignment. That's Ms. Lightsey. Mr. Chapman did not know even where the proposal that he was supposed to rewrite was physically contained. He didn't know where the data was. He had been out for five days. Let me ask you this. If his response had been it's impossible, no one can do that assignment in that period of time, I can see where you would have the argument. But given that he just said I'm not doing it and did not make any attempt to do it, it's not like he tried, didn't finish it, and got fired for not completing the assignment. He defied the order. And that's the concern I have. Yes, Judge Raggi. Two responses to that. First is, I think under the circumstances, Mr. Chapman could have been more specific. He could have been more detailed. He could have been more responsive. But that is not a material distinction here, because under the circumstances, a reasonable jury could find here that I won't do this means I can't do this. And in fact, Terry Eichmann had a history three weeks prior of assigning Mr. Chapman an assignment he couldn't do. Where is his statement in the deposition that that's what he meant when he said too bad, not working on it? I am not aware of that statement in the record, Your Honor. I didn't think so. And so you're saying that because others who there's some issue about whether they were in the same position or saying they couldn't have done it, that that's going to be enough to admit an inference of that he was set up for failure? When we've got this record that he's saying, no, I'm not working this, not touching this anymore, too bad, not working it. Three times he tells the supervisor when the supervisor tells him to do the job that he's not doing it. That's correct, Your Honor. The record speaks for itself here, but the e-mails do not tell the whole story. Your point is this should go to a jury. Yes, Your Honor. Judge Parker. Thank you, sir. If the summary judgment is affirmed here, what it means is that employers have a foolproof mechanism to discriminate in the Second Circuit. You simply give your employee an assignment you know he can't do. And if he does — That's not quite what the import, it seems to me, of Judge Radji's question. There are other responses that your client could have given. I mean, that's what we're wrestling with. Not, no, it ain't going to happen. It's he could have said this is an impossible task. I can't get it done. You know I can't get it done. Words to that effect. There is no doubt about that, Judge Hall. For these reasons. Absolutely correct, Judge Parker. He could have responded to his dilemma without being insubordinate. He could have — well, if he'd said I cannot do that. He chose to offer up his head to his employer. I'm sorry, I didn't — he chose to — I mean, he had options open to him that were not insubordination, but he chose the nuclear option. He told his employer to drop dead. He could have been more articulate. I will agree with that. However, there are a whole totality of circumstances here that suggest that that was a — that a jury could find that to be a reasonable response under the circumstances. This Court said in some term we — What he says, I didn't quote the whole thing, is you benched me, not touching this anymore. So the explanation he gave was that the boss had taken him off this, and therefore he wasn't coming back. And the response from the boss is no one has been benched. Never the case. No relief of assignment. And his response is too bad, not working it. Judge Radji, the reasonable jury — may I finish my answer? Of course. A jury may conclude that Mr. Eichmann was lying in that circumstance. He did, five days earlier, benchmark Chapman from this assignment. And I agree that Mr. Chapman could have been more articulated, but a jury could find that Eichmann benched him. And then when Chapman said, this isn't my assignment anymore, which is one available reading of you benched me, Chapman — Eichmann said, no, I didn't. That is a lie. And a jury could find that. Okay. Before we sit down, just one last question. Would you concede that your client's responses were insubordinate? No, Your Honor. I would not concede that. I would not concede that it was insubordinate or violated the policy. Thank you. Mr. Sussman. Thank you, Your Honor. May it please the Court, my name is Eric Sussman. I'm a lawyer at Day Pitney in Hartford, and we represent Sikorsky Aircraft Corporation. The plaintiff, Mark Chapman, was fired from his job at Sikorsky on September 29, 2011, after being brazenly insubordinate to his supervisor, Terry Eichmann. That insubordination, which is in the record at A138 through 140, was in writing in three separate e-mails authored by the plaintiff himself two days prior. We do have those because, as I said, they're e-mails, so we have the record of that. But the context offered by the plaintiff, I know disputed by your client, is that this follows a series of statements that could be understood to evidence age bias. So why shouldn't this go to a jury? Because there's no nexus between those statements and the ultimate decision. And what the plaintiff needs to show, Your Honor— Why isn't that a jury question? Why isn't— Well, you know, as counsel just argued in the briefs show, one of the statements is made within hours of this e-mail exchange. So why isn't it a question for the jury whether that spoken bias informed this exchange and the ultimate decision to fire him? Two things, Your Honor. Number one, the jury's inference needs to be a rational inference based on evidence in the record. And two, the plaintiff— The evidence in the record is the evidence of his statements. I understand. Maybe I'm not making myself clear, but you have to explain to us why this doesn't go to a jury. Sure, Your Honor. First of all, as to the alleged remarks that occurred two days prior to the plaintiff's termination, the plaintiff admits that that comment was, in the plaintiff's words, in a jesting kind of tone, and that's in the record at S.E. 115. Sounds like a jury question just for your information. Well, Your Honor, I think that based on the— That's not something that we can assume in looking at a summary judgment motion. Well, I think we can look at the plaintiff's admission that he viewed— he himself admitted that the comment was in a jesting kind of tone. And from that, difficult to see how a rational jury could infer something else. How does the fact that it may have been offered up in jest make it any less ageist? It's not at all infrequent in these cases that you hear sexist or ageist comments that the speaker thinks are funny. I think it makes it— in part aimed at that kind of behavior. Well, Your Honor, I think that there are a couple of things about this case that are unique. One is, as the Court correctly pointed out, this is a situation in which the plaintiff has been brazenly insubordinate to his supervisor and has sent the supervisor an unequivocal and unabashed refusal to do assigned work. The e-mails are as notable for what they say as for what they don't say. Those e-mails don't say anything about the assignment being impossible. In fact, he wasn't terminated for failing to complete that assignment. He was terminated because he refused to do it in the first instance. His e-mails don't say he needs other materials or that he has an appointment that day. What his e-mails say is, too bad, you benched me. That's the only semblance of a reason that he gives. Not because there's age-related remarks or that he's concerned about age discrimination in the workplace, but an unequivocal, no, I'm not doing this. And at that— It's a position that even if the rest of the record would admit an inference that this particular supervisor had, you know, a bias against older employees, that this exchange by itself, no matter what the employer's mindset would justify the termination. To use a more extreme example, as if he had punched him in the nose. Certainly, Your Honor, and that was— So even if the plaintiff could somehow show, even if this evidence were sufficient to show that Mr. Eichmann didn't like older workers, Mr. Chapman still has to show that he wouldn't have been fired for insubordination but for his age. To pick up on your hypothetical, Your Honor, plaintiff's counsel in his reply brief tries to compare this case to a hypothetical situation in which a supervisor fires a female employee while explaining that, I just don't want any women working for me. And that's not this case. First of all, the plaintiff doesn't claim that Mr. Eichmann made any age-related remarks during the termination process. And that's undisputed. Second of all, the plaintiff doesn't claim that Eichmann actually said to him, I don't want you here because of your age. But let me change counsel's hypothetical slightly to make it more applicable to this case. Suppose you have a supervisor making age-related remarks to the plaintiff that he's too old to work and so forth. And the plaintiff gets angry and pulls out a knife and stabs the supervisor. Could we really say at that point that there's an issue of fact about whether the plaintiff was fired but for his age? I think the mere utterance of age-related remarks doesn't insulate him from termination and doesn't insulate him from summary judgment either. But we don't have a stabbing, a punch in the nose, whatever. But you're saying that this e-mail exchange shows such insubordination that we should treat it the same way, that no matter what the employer's mindset, an employee who acts like this can get fired without having to defend the action? I think under these circumstances, under these facts, that is true, Your Honor. If the plaintiff, this could be a different case if, for example, the plaintiff had some other evidence, some statistical evidence, some meaningful comparator evidence. And I realize, and I'll address this in a moment, that he claims that there was a supervisor, or I'm sorry, a coworker who was insubordinate and wasn't terminated. But he has no evidence of inconsistent explanations being offered for the termination, no evidence of age-related remarks being made in the termination process. If I think we're talking about the same person, that was an employee who actually said that it was impossible to do the work under the circumstances presented, not I'm not doing it. That's — She wasn't able to do the work in the circumstances presented, right? That's correct. He couldn't physically do it. That's it. That's correct, Your Honor. What she said, and this is a situation in which the plaintiff claims that this particular coworker, Jan Leitze, was similarly situated, but she was not because she didn't engage in conduct similar to the plaintiff. Plaintiff counsel makes an argument in his brief saying, well, this wasn't the same conduct. It doesn't — or that it has to be the same conduct, or he's suggesting that it's not — that she's similarly situated. The plaintiff claims that Leitze refused to do this work, and in fact, Leitze's testimony was not that she refused to do it. Her testimony was that there was one occasion when Mr. Eichmann asked her to do something she said she physically couldn't do because of access she didn't have, and she testified, and this is at A265 in the record, quote, part of the project that needed to be completed again was access I didn't have, and it had to go to a different department to get done. I could not do it. So Ms. Leitze was not similarly situated to the plaintiff. In order to — Why can't counsel, in closing argument, make the argument, as counsel — as your adversary has here, that this was all a setup? I mean, you have this litany of ageist remarks, what, starting in the summer of 2011 and going up to September, and it seems to me if I were counsel, I could make some plausible argument to the jury and tell me why I couldn't, please, that, look, the supervisor just got tired of all of this and decided to set him up and tell him something that he could do and provoke this kind of response and then say, good, you're gone, you old bag of bones, or whatever you call them. Yeah, you look like an old bag of bones. Because, Your Honor, what he needs is evidence that but for his age he wouldn't have been fired for his insubordination, and the difficulty is that in this case, in order for the plaintiff — The argument is — and I understand exactly what you're saying. The argument is I'm going to set this guy up because of his age so he is insubordinate. And it seems to me the facts would support that argument and get around the but for problem. Tell me why not. That is the argument the plaintiff's making about being provoked into this insubordination. And the problem is that there's no evidence that Chapman's insubordination e-mail was in any way provoked by unlawful discrimination by Eichmann. If anything, that evidence, as Judge Radgett correctly pointed out, is that Mr. Chapman was being insubordinate because he believed that Mr. Eichmann had benched him, and that's what his e-mail said. I thought — I would think that you would have to argue in response to what Judge Hall's concern is that there really was a deadline. There really was a contract that they had to do. I mean, it wasn't that they pulled out of the blue requiring him to do it by a certain date. They had a client who was putting this pressure on them, and they had to do it. So it's a bona fide assignment. Don't you have to be able to say that the record will only admit that conclusion? No, Your Honor. Well, it was a bona fide assignment, Your Honor. But the problem is that the plaintiff wasn't terminated because he didn't complete the assignment. But to the extent the concern is that he was set up, this is not a supervisor who gave him an assignment that he didn't really need to have an employee do. He needed an employee to finish this, right? Or did I misunderstand the record? Perhaps I'm giving Sikorsky more credit than it should have. No, no. It was a legitimate assignment, and it needed to be done. It was a legitimate time deadline. That's correct, Your Honor. And if this were a situation where Mr. Chapman had endeavored to complete the assignment and failed and then got fired for it, this might be a different case. But that's not what this case is. This case is an unabashed refusal to do his job. And for those reasons, Your Honor, no reasonable jury could conclude that but for Mr. Chapman's age, he wouldn't have been fired for his insubordination. If the record demonstrated hypothetically that the superintendent knew this was an impossible assignment, would a refusal to do it have been insubordinate? If the supervisor knew that it was an impossible assignment? Yeah. Under those circumstances, I actually don't think it would, Your Honor. If he tries to do it and he fails and the supervisor says, well, you failed, you're fired, again, maybe that's a different case. But the idea that the plaintiff should be, you know, the age discrimination statutes are not intended to prevent employers from running their business. And here, Mr. Chapman was given a- My hypothetical is if the supervisor knew it was an impossible task. He says to one of his co-supervisors, look, we've got to get rid of this guy, he's too old, I'm going to give him something we know he can't do. Under those circumstances, Your Honor, and I think that would be a different case, but even under those- A hypothetical. Understood, Your Honor. But even under those circumstances, I think at least the plaintiff has to try to do the job. Maybe in that case you could, I mean, clearly it's a different fact pattern and it's not one that's presented here. But even then, it seems to me that the plaintiff in sort of brazenly and in taunting fashion telling his supervisor, I'm not going to do this, what else are they supposed to do? You know, he is given an order, a direction to complete an assignment and he's given that direction three times in three consecutive emails. And three times, Mr. Chapman says no, no, no. He's taunting his boss. He's mocking him and telling him to go away. He's just not going to do the job. We've got two possible responses. One of which is he either starts to do the job and can't finish it or says to him, I'll do my best, but I'm not sure I can finish it. Then he gets fired. That, you're saying, could possibly be a problem. But it's the refusal to do a job, whether he thinks it can be done or not, you're saying an employee can't do that. Am I understanding you correctly? Yes, Your Honor. He can't do that and certainly under these circumstances he can't do that. Let's hear from your adversary in rebuttal. Mr. Goodman. Thank you, Judge Radji. I'm going to try to make five points. We'll see if I have time to do that. Three minutes. My opposing counsel went over by a few minutes, but of course it's the Court's docket to control. First point. There is evidence in the record, to pick up on Judge Parker's question, and I believe Judge Hall's question, that Mr. Chapman was set up here and that Terry Eichmann knew that this assignment was impossible. A reasonable jury could find that he was given this assignment in order to get him out. Now, we don't dispute that this, the existence of the project was real or the existence of the deadline was real. That's not the problem. The problem is that it was given to him rather than to somebody else when he knew it was impossible. In fact, it took the people who ended up doing this assignment, the ones who had most recently been working on it, who had rewritten this proposal over the weekend in a super human effort, dozens of hours to complete, 400 percent of the time given to Mr. Chapman. That is certainly one available interpretation of this record. Not mandated, but one available interpretation. And if that is an available interpretation, it's for the jury to decide what happened. Two, there are cases that the jury infers that based on his, based on bias that Eichmann has evinced through his statements, Eichmann was trying to find a way to terminate Chapman for a purportedly nondiscriminatory reason. By giving him a job that was to be done within a short period of time and regardless of Eichmann's, sorry, not Eichmann's, excuse me, Mr. Chapman's response, it was a job that couldn't be done in that period of time. Yes. He's either going to say this is impossible, like, you know, he's either going to say I'm not going to do it or he's going to try to do it and fail and then you fire him. I don't understand why they're equivalent for this purpose. I do understand why if he had made a good faith effort to do it, couldn't do it and got fired, you would have the argument that nobody could do this and this was a setup. But I don't understand what your theory is in which an employer has to tolerate an employee telling him no. The case law from this circuit, Your Honor, look at the Sumner decision and look at the that it is not okay for an employer to provoke an employee through discrimination and then fire him for the response. Now, a jury could find... Provocation in those other cases. It's not a work assignment. I would say that that is a matter for the jury, Your Honor. It's a question of what is the level of provocation and whether the response was reasonable. The theory on which a rational jury could say giving someone a work assignment is provocation. The theory is that Chapman knows that this is intended to get rid of him. And in fact, just three weeks earlier, Eichmann gave Chapman an assignment he didn't think he could do. And Chapman does it. He works through the night. He hands him the assignment. Eichmann says, I didn't think you could do that. And then doesn't look at it for weeks. So if this had been the first time, maybe Chapman would have tried. Maybe Chapman would have said, Mr. Eichmann, I don't think I can do this. But this is the second time this happens in the course of three weeks and in conjunction with a number of statements where he's saying, you're an old man, get out of here, and you're getting too old to do this job. And those are in the context of the termination process. I want to add one more point, if I may, which is my counterpart said that this is not a case in which we have a false explanation. Here we do have a false explanation. In its summary judgment briefing, Sikorsky says we fired him because he took a few days off when there was a tight deadline. That's in their summary judgment briefing. That is, that a jury could conclude that was absolutely false. Mr. Chapman went out on a preapproved medical leave. He was recovering from surgery and an illness. And remember, the point of pretext is not we don't know what happened. The point of pretext is when a jury could conclude that an employer is dissembling, it is lying, the jury can ask what are they covering up for. And, in fact, in the Reeves case from the Supreme Court, they said that is quite persuasive evidence of discrimination. Now, here we have that pretext in connection with a very strong prima facie case on the basis of all of the statements that Mr. Eichmann made in the months, the decision maker made in the months leading up to the termination, including the very last time he saw Mark Chapman before the termination. I know we have to view the record in the light most favorable to your client, but remind me, it's your client's account of these discriminatory statements, right? Is there any other source for attributing the discriminatory statements? I'm not aware of that, Your Honor. It's going to be a matter of whether the jury believes your client, but that's what it is. Absolutely, but at summary judgment, as the Court knows, the record must be accepted as true. Acknowledge that. Okay. Seeing my time is up. Thank you. Thank you, Your Honor. Counsel, thank you very much. We're going to take the case under advisement, and we'll try and get you a decision as soon as we can.